IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KOCH MATERIALS COMPANY,<br><br>    Plaintiff/Counterclaim<br>               Defendant<br><br>    v.<br><br>SHORE SLURRY SEAL, INC.,<br><br>    Defendant/Counterclaim<br>    Plaintiff<br><br>    and<br><br>ASPHALT PAVING SYSTEMS, INC.<br><br>    Defendant. | Civil Action No.: 01-CV-2059 (RBK) |

**KOCH MATERIALS COMPANY'S RESPONSE TO SHORE SLURRY SEAL, INC. AND ASPHALT PAVING SYSTEMS, INC.'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO KOCH'S MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF BRIAN BLONDER**

At the June 9, 2005 hearing on Koch Materials Company's ("Koch") Motion to Exclude the Expert Report and Testimony of Brian Blonder, the Court expressed significant concerns with regard to Mr. Blonder's calculations of damages resulting from Koch's alleged breach of the Exclusive Supply Agreement ("ESA"), including Shore's related Novachip damages.

Specifically, the Court found no basis for Mr. Blonder's assumptions that Shore would have been able to market and exploit Novachip to the same extent as Koch or that Koch's pricing of emulsion under the ESA harmed Shore. For instance, the Court said there was no evidence that Mr. Blonder actually determined and compared Shore and Koch's abilities to grow the Novachip technology in concluding that Shore's growth would have equaled that of Koch's. Likewise, the Court said there was no evidence that Mr. Blonder analyzed Shore's bidding process and structure to determine how Koch's pricing affected Shore's profits on road construction projects.

In response, counsel for Shore stated that there was evidence supporting Mr. Blonder's Novachip and ESA assumptions, but it had not been included in Shore's Opposition to Koch's Motion to Exclude (the "Opposition"). Although not required to do so, the Court permitted Shore to submit a supplemental filing setting forth that evidence.

Shore's Supplemental Filing does not address the Court's concerns with Mr. Blonder's assumptions. Specifically, it does not address Mr. Blonder's flawed methodology in formulating his assumptions nor does it establish that he conducted a proper and guided analysis concerning Shore and Koch's Novachip marketing capabilities. Rather, Shore's Supplemental Filing simply reiterates old arguments and support previously set forth in Shore's Opposition and then "looks back" at Mr. Blonder's conclusions to try to demonstrate that they are justified.

But the Court has already rejected the arguments and support set forth in Shore's Opposition. Moreover, the Court's concerns are not with Mr. Blonder's conclusions. As Shore itself states, the focus of Daubert "is on methodology, not conclusions" and the test "is whether the particular opinion is based on valid reasoning and reliable methodology."[1] Here, nothing in Mr. Blonder's Report, Shore's Opposition, or Shore's Supplemental Filing shows that Mr. Blonder employed valid reasoning or a reliable methodology in reaching his conclusions. As such, his testimony regarding Shore's Novachip damages and damages resulting from Koch's sales of emulsion is properly excluded.

## I. NOVACHIP

In his Expert Report, Mr. Blonder concludes that "[h]ad Shore not entered into the Novachip Sublicense Agreement, Shore would have continued to earn royalties from sub-licensing agreements with users of the Novachip technology in much the same way that Koch did from 1998 through 2003."[2] Thus, Mr. Blonder calculates Shore's Novachip damages based on the amount of Novachip used by Koch and Koch's sublicensees since Shore sold the technology to Koch.[3]

At the June 9, 2005 hearing, the Court challenged Mr. Blonder's assumption concerning Shore's Novachip capabilities and questioned Shore concerning the analysis undertaken by Mr. Blonder in determining, for instance, that Shore would have been able to market Novachip to the same extent as Koch. The Court saw nothing in Mr. Blonder's Expert Report or Shore's Opposition indicating that Mr. Blonder's Novachip assumption was based on "good grounds."

---

[1] Shore's Supplemental Filing, at 9 (citations omitted).

[2] Blonder's Expert Report, at 16 ¶ 51, attached as Exhibit A to the June 13, 2005 Certification of Kathleen A. Orr ("Orr Cert.").

[3] Blonder's Expert Report, at 17 ¶ 53, Ex. A to Orr Cert.

Shore's Supplemental Filing does not address or alleviate that fatal flaw. In fact, Shore simply reiterates the <u>same arguments and evidence</u> set forth in its Opposition in an attempt to persuade the Court that Mr. Blonder's conclusions were justified. The problem, however, is that Mr. Blonder failed to employ a reliable methodology in reaching those conclusions; instead, he simply assumed that Shore's Novachip performance would have equaled that of Koch's.

There is nothing in the record indicating that Mr. Blonder instituted a measured and reliable approach to determining Shore's Novachip capabilities had Shore not sold the Novachip licensing rights to Koch. In fact, in his deposition, Mr. Blonder confirmed that his conclusion was based solely on the verbal representations of representatives of Shore that Novachip was gaining notoriety in the industry. After filing his report, Mr. Blonder received a limited number of documents from Shore that Mr. Blonder believed confirmed that notoriety. He stated:

> A.   As I was writing the first report, one of the subject matters that I addressed was about the marketing of the Novachip technology and how it was becoming important in the market before the sale purchase agreement and related agreements that occurred in February of '98.
>
>   I was told by Shore Slurry, through conversations with representatives of Shore, that it was being marketed by them before and that there was a lot of interest. A lot of things that were going on that made it a desired technology even before that sale occurred and wrote the report based on their verbal information and asked if I could get – if they had anything that demonstrated that was the case.
>
>   And so they followed up and they found these documents because they were pretty sure they did and sent them to me after the first report.
>
> Q.   And did you – you said you never considered these reports in forming your opinions?
>
> A.   At the time I wrote the report, I was relying on their verbal representations that was the case. After the report was issued, that verbal representation was

4

supplemented by documentations, which was in line with what the verbal representation was.[4]

Likewise, Mr. Blonder provided the following explanation when asked to explain the methodology he employed in determining whether Shore had the ability to exploit the Novachip technology in the same fashion as Koch:

> Q.   Mr. Blonder, <u>tell me everything that you did</u> to determine whether or not Shore had the ability to exploit the Novachip sublicense technology to the extent that Koch was able to do so? To profit from the Novachip technology to the extent that Koch was able to do so?
>
> A.   If you have a valuable technology, exploiting it is a lot different from trying to exploit say a product that embeds a technology. There you have to create a product, you have to market it, and you have to do a lot. If you have a technology that's in demand in the market and all you're talking about is licensing the rights.
>
> Exploitation is a lot simpler if you've got a good technology that's in demand. That's why we have a lot of patents that are created, you know, by individuals and are able to go and collect royalties from very large corporations because they have technology that's in demand.[5]

Thus, Mr. Blonder, by his own admissions, did not actually conduct any independent analysis concerning Shore's ability to develop, market, or benefit from Novachip in the same fashion as Koch.[6] Nor did Mr. Blonder consider the actions that Koch took to develop, market,

---

[4] B.Blonder Deposition Transcript, dated June 10, 2004, at 55:14-56:20, attached as Exhibit B (hereinafter "Blonder Dep.") to Orr Cert.

[5] Blonder Dep., at 261:16-262:16, Ex. B to Orr Cert. (emphasis added).

[6] It is worthy of note that, in the context of Koch's adequate assurances complaint, the Court already found it unlikely that Shore would have been able to sell any sublicenses for Novachip after its sale of assets to APS, much less sublicenses ultimately equaling the success of Koch with Novachip. Specifically, the Court found:

> The [Novachip] Sublicense Agreement analysis is straightforward. Shore reported that it planned to sell all of its "balance-sheet assets," but retain, rather than assign, the Sublicense Agreement. Even assuming that historically, Shore had met most of its Novachip obligations by selling sublicenses to third parties, rather than laying its own road surfacing, any reasonable person would wonder

or benefit from Novachip or other variables, including the functional and operational differences between Shore and Koch, that may have impacted Shore's ability to equal Koch's Novachip success. In fact, Shore has never questioned Koch witnesses about Koch's development and marketing of Novachip.

In its Supplemental Filing, Shore argues that various pieces of evidence establish that Mr. Blonder's assumption is based on "good grounds" in the record. Shore's arguments, however, are flawed for a number of reasons. First, the majority of the evidence and arguments it makes with regard to that evidence were in Shore's Opposition. At the June 9, 2005 hearing, the Court found that evidence insufficient to establish the reliability and credibility of Mr. Blonder's assumption. For example:

> (1) Pages 5 through 6 of Shore's Supplemental Filing were lifted, word-for-word, from pages 35 through 37 of Shore's Opposition.
>
> (2) The majority of Page 4 of Shore's Supplemental Filing, which concerns the amount of Novachip applied by Shore and its sublicensees, was lifted from page 35 of Shore's Opposition.
>
> (3) The paragraph on page 7 of Shore's Supplemental Filing citing Mr. Capoferri's deposition testimony was lifted from page 37 and 38 of Shore's Opposition.
>
> (4) Note 4 on page 7 of Shore's Supplemental Filing cites a letter from one of Shore's former sublicensees to Koch, which letter was cited in note 14 on page 33 of Shore's Opposition.

As was the case with Shore's Opposition, this "evidence," including Koch documents evaluating Novachip opportunities and the value of obtaining Shore's emulsion manufacturing

---

> how Shore planned to sell *anything* with no telephones, no computers, and no office furniture. That Shore might well have leased these items only prompts further questions: Would Shore have had the financial capacity to obtain leases and hire a sales staff? Or were the proceeds of the sale going directly to Capoferri?

Koch Materials Co. v. Shore Slurry Seal, Inc., 205 F. Supp. 2d 324, 331 (D.N.J. 2002).

facility, Mr. Capoferri's testimony that Shore could offer support and guidance to Novachip licensees, and the amount of emulsion applied by Shore, has nothing to do with the veracity and reliability of Mr. Blonder's methodology and approach in reaching his Novachip conclusions.

In fact, much of the evidence was not even in Mr. Blonder's possession at the time he rendered his opinion.[7] For instance, on pages 1 through 3 of its Supplemental Filing, Shore quotes at length from a letter from Shore to the French licensor of Novachip in 1997. Shore states that the letter was "considered and relied upon by Mr. Blonder" and that it establishes that "it was certainly not unreasonable for Mr. Blonder to conclude that in the absence of the Novachip Sublicense Agreement, Shore Slurry would have simply continued or expanded its national marketing efforts, in trade journals and periodicals (requiring no Koch infrastructure)."[8] But the truth is that the letter was not provided to Mr. Blonder until <u>after</u> he issued his Expert Report, where he concluded that Shore would have achieved the same success with Novachip as Koch.[9] Further, regardless of whether it was later reviewed by Mr. Blonder, it does not substitute for Mr. Blonder's missing analysis.

Fundamentally, Shore's "look back" approach, where it tries, after-the-fact, to justify Mr. Blonder's conclusions, does not remedy Mr. Blonder's failure to employ a reasonable and reliable methodology in opining that Shore's Novachip performance would have equaled Koch's. The fact that documents indicate that Novachip existed, was marketed to some degree, and was

---

[7] See <u>supra</u> at 4.

[8] Shore's Supplemental Filing, at 3.

[9] Blonder Dep., at 51:10-55:6, Ex. B to Orr Cert. Likewise, the July 1997 press release (cited on page 3 of Shore's Supplemental Filing) was received by Mr. Blonder <u>after</u> he issued his Expert Report, and the letter from one of Shore's former sublicensees to Koch (cited in note 14 on page 33 of Shore's Supplemental Filing) was not listed in Mr. Blonder's Expert Report as a document considered.

available for use by the public prior to Shore's sale to Koch, or that documents indicate that Koch believed Novachip use would expand prior to its purchase from Koch, or that documents show that Shore and its sublicensees sold certain amounts of Novachip, does not justify Mr. Blonder's relying solely on the representations of Shore in concluding that Shore's Novachip performance would have equaled Koch's.

Finally, Mr. Blonder's provision of a new affidavit in support of his analysis and Shore's attachment of that affidavit to its Supplemental Filing would be grossly inappropriate in any case, but it is more so here when considered in the context of Shore's conduct to date.[10] Koch

---

[10] Koch could list many, many examples of such gamesmanship without even referring to the Court's Sanctions Opinion. It need not, however, repeat that tired history. Two recent examples, with which the Court is immediately familiar, are illustrative. First, on June 8, 2005, Shore filed an emergency motion for an adverse inference with respect to documents it allegedly it sought from Koch in 2002. The purpose of that motion was to distract the Court from Shore's continuing failure to follow the discovery rules and Orders of the Court. The Court summarily denied that emergency motion without even hearing, notwithstanding Shore's representations in that motion, that Shore represented to the Court in January 2003, "We don't need anything more of any great significance, we're ready to end the case the end of this month . . . . We're done, finished." Excerpts of Status Conference Transcript, dated January 13, 2003, at 11-12, attached as Exhibit C to Orr Cert.

Second, when APS was pursuing its Robinson-Patman Act ("RPA") claims against Koch, Shore represented to the Court that APS purchased emulsion from Koch, through Shore. See, e.g., Excerpts from Koch's 56.1 Statement on its Motion for Summary Judgment on Shore/APS's RPA Claims, dated August 2, 2004, and Shore/APS's Response, dated August 20, 2004 (taking "no genuine issue" with Koch's statement that "[i]n performing the contracts for the government entities, APS (through Shore) purchased its asphalt emulsion from either Koch's Reading, Pennsylvania facility or its Petty's Island, New Jersey facility"), attached as Exhibit D to Orr Cert.; Excerpts from APS's Counterclaim, dated May 22, 2002, at 4 ("In performing these subcontracts, APS obtains all of its asphalt emulsion requirements from Koch, through Shore Slurry."), attached as Exhibit E to Orr Cert. Later, once APS's RPA claim was dismissed and Shore wished to pursue claims as a consumer under the New Jersey Consumer Fraud Act, Shore shamelessly changed the facts and represented to the Court that APS never purchased emulsion from Koch through Shore. See Excerpt from Shore's Opposition to Motion in Limine to Preclude Evidence of Claims or Damages After May 3, 2001, dated June 7, 2005, at 4 ("APS never purchased any product from Koch – "through Shore" or otherwise."), attached as Exhibit F to Orr Cert. That Shore should so blatantly mislead the Court evidences an utter disregard for the Court's Rules or the proper consequences for violating those Rules. That it should do so with such regularity is what has forced Koch to assume the role of a complainer, when it simply wants

does not believe the Court intended to permit Shore to attempt to rehabilitate Mr. Blonder's expert opinion by providing an affidavit from Mr. Blonder, 17 months after his report, 12 months after his deposition, 10 months after Shore's opposition brief was due, and 1 week before the jury trial in this case.[11] Mr. Blonder's opinion, including the methodology he employed in reaching that opinion, is properly evaluated by reference to his Expert Report, which is dated January 9, 2004, not an affidavit provided on the eve of trial that attempts to justify that report.

For example, Mr. Blonder states that Shore would have experienced considerable success as a licensor of the Novachip technology and cites "the Novachip agreement itself, which demonstrated that Shore was willing in 1998 to commit to minimum usage requirements of 2.5 million square yards annually for the period from 1998 to 2003."[12] Of course, this information does not justify Mr. Blonder's conclusion, but it is wholly inappropriate for him to proffer an affidavit one week in advance of trial setting forth different rationales in support of his conclusions once he has heard the Court's concerns with his report.[13] Such tactics are all too familiar to Koch in this case – "Koch is much like a mouse searching for the cheese at the end of a maze in which the walls and the cheese shift continuously. Such a maze is undoubtedly frustrating for the mouse."[14] The truth here is that Mr. Blonder had the Novachip Sublicense

---

what every litigant is entitled to demand: That an opposing party follow the Rules and Orders of the Court and be held accountable for any failure to do so.

[11] Mr. Blonder's Report is dated January 9, 2004. He was deposed on June 10, 2004. Koch's Daubert motion was filed on July 2, 2004. Shore's Opposition was filed approximately 6 weeks later on August 20, 2004.

[12] See Exhibit P, ¶ 9 to Shore's Supplemental Filing.

[13] This is no different from a party who, after losing on summary judgment, asks the Court to vacate that ruling on the grounds that the Court erred because it failed to consider an argument that the party never raised.

[14] Koch Materials Co. v. Shore Slurry Seal, Inc., No. 01-CV-2059 (RBK), slip op. at 35 (D.N.J. June 30, 2004) (Rosen, J.).

9

Agreement in his possession at the time he proffered his Expert Report. By his testimony, however, he chose to rely on the representations of Shore alone in reaching his conclusions regarding Novachip. This Court is entitled to rely on what he said in his Report and what Shore said in its Opposition in determining whether his testimony should be excluded.

Further, even setting aside the inappropriateness of Mr. Blonder's affidavit, the information set forth in that affidavit, as with the other information cited in Shore's Supplemental Filing, does not remedy Mr. Blonder's failure to employ a reasonable and reliable methodology in concluding that Shore's Novachip performance would have equaled Koch's. For instance, Mr. Blonder suggests that the actual amounts of Novachip applied by Shore's former sublicensees allow him to confirm that Shore and its former sublicensees have applied 30% of the Novachip applied in the U.S, which, in turn, he believes supports his conclusion that Shore's application of Novachip in the U.S. would have equaled that of Koch.[15] That information, even if true, does not remedy Mr. Blonder's baseless assumptions in the first instance.[16]

---

[15] In his affidavit, Mr. Blonder states that he only recently obtained information from Koch allowing him to determine total usage of Novachip by Shore sublicensees. That is not true. Koch recently provided updated amounts through 2005, but Koch provided then-current Novachip usage amounts in advance of Mr. Blonder's Expert Report. See KMC 30192-93, attached as Exhibit G to Orr Cert.

[16] The fact that Shore and its former sublicensees applied 30% of the Novachip in the U.S. during Koch's ownership of the Novachip license rights does not establish that Shore would have achieved the same success with Novachip as Koch. As an initial matter, 30% does not equal 100%. Moreover, Mr. Blonder did not consider, e.g., whether Koch's marketing of Novachip increased Shore's and Shore's former sublicensees' ability to sell Novachip to townships and municipalities or whether Koch's ownership of Novachip encouraged Shore's former sublicensees to enter into sublicense agreements with Shore in the first place.

## II. EXCLUSIVE SUPPLY AGREEMENT

In his Expert Report, Mr. Blonder states that Shore is entitled to damages for Koch's alleged breach of the ESA equal to the difference in price it paid for emulsion as compared to the lower prices allegedly paid by competitors purchasing the same amounts of the same product for use in the same markets within the same two week period.[17]

At the June 9, 2005 hearing, the Court challenged Mr. Blonder's ESA damages calculation because it assumes that any difference in price paid by Shore automatically caused a loss of profits to Shore. In doing so, the Court correctly noted that Shore is only seeking damages for projects on which Shore bid <u>and</u> won in the public bidding arena, which makes it difficult to contemplate any injury to Shore resulting from Koch's pricing. (This is particularly so when it is undisputed that Shore made a profit on every single road construction project where it used Koch's emulsion and its profits increased every year it was buying emulsion from Koch.) As with Mr. Blonder's calculation concerning Novachip, the Court saw nothing in Mr. Blonder's Expert Report or Shore's Opposition indicating that Mr. Blonder's Novachip assumption was based on "good grounds."

In its Supplemental Filing, Shore argues that the Court's concerns with Mr. Blonder's Expert Report are misguided because, so Shore says, the Court mistakenly assumed that Shore obtained the cost of materials from Koch prior to submitting its bid and, therefore, would have passed on any lower price for emulsion. According to Shore, it could not have possibly passed the lower cost on to its customers because the bidding occurred "many months before Shore Slurry knew the price of the emulsion."[18]

---

[17] Blonder's Expert Report, Part V, Ex. A to Orr Cert.

[18] Shore's Supplemental Filing, at 11. For purposes of this response, it is unnecessary to address in detail the merits of Shore's representations in this regard. Koch notes, however, that the

11

Even if we assume that Shore's argument is based on the truth and not another misrepresentation, it does not address the fact that Mr. Blonder conducted no analysis in determining that Koch's pricing caused an injury to Shore, including an analysis of when Shore obtained prices for emulsion from Koch and how Shore determined the price for emulsion to include in its bids. Mr. Blonder, by his admission, simply assumed that the price difference between the amount that Shore was paying for projects it won and the amount other customers were paying for projects they won would have affected Shore's bottom line:

> Q. Tell me how Shore was harmed under the exclusive supply agreement in connection with these allegedly lower prices?
>
> A. Because Koch had an obligation per the contract to provide Shore with something that is very common, often referred to as the most favored nation clause, which basically says that if you are giving somebody else a better deal, I have a right to get it as well.
>
> Q. But how was it harmed?
>
> A. Well, I would rather pay 70 cents than 80 cents for something, wouldn't you? Aren't I harmed if I have to pay 80 and I could be paying 70, regardless of what the result of my performance is from paying 80, I'm better off if I pay 70.[19]

Moreover, Shore's argument assumes that Shore ultimately paid <u>more</u> for emulsion from Koch than it included in its bids to public entities and, therefore, ultimately lost money. But Mr. Blonder sets forth <u>no</u> analysis in his Expert Report that supports that assumption. For instance, Mr. Blonder did not evaluate Shore's bidding process and structure to determine how Shore determined what price for emulsion to include in its bid. Mr. Blonder also did not calculate whether Shore even suffered any injury as a result of Koch's pricing. In fact, Shore could have

---

documents Shore cites as evidencing that Shore did not know the price of emulsion at the time of bids (Exhibits L and N to Shore's Supplemental Filing) were <u>all</u> generated after this litigation began.

[19] Blonder Dep. at 140:17-141:10, Ex. B to Orr Cert.

paid <u>less</u> for emulsion from Koch than it included in its bids to public entities and retained the difference between those two prices as a profit.[20]

Without analysis, investigation, or evaluation of Shore's bidding process, Koch's pricing to Shore, and the effect of Koch's pricing on Shore's projects by Mr. Blonder, Mr. Blonder may not opine that Koch's pricing actually caused damage to Shore. Shore states that Mr. Blonder "calculated the amount by which Koch overcharged Shore Slurry, in a plain attempt to place Shore Slurry in the position it would have attained had Koch performed the contract."[21] But Mr. Blonder <u>never</u> determined or considered what position Shore would have attained if it had received different pricing, including, <u>e.g.</u>, what effect a different price from Koch may have had on Shore's bids or its profits.

In fact, it is not disputed that Shore's claim for damages under the ESA is identical to its previous claim for damages under its Robinson-Patman Act claim (the only difference between the two calculations is that Mr. Blonder's ESA calculation is based on a two week comparison period, whereas Mr. Blonder's Robinson-Patman Act calculation was based on a year long comparison). In dismissing Shore and APS's Robinson-Patman Act claims, this Court found Mr. Blonder's damages analysis insufficient. Specifically, the Court stated,

> As for Blonder, his deposition offers only economic theory and his report offers mere conclusions based on the fact of price discrimination. Blonder's report does nothing to establish a causal link between price discrimination and actual harm suffered by Shore and APS; and his deposition testimony confirms the Court's suspicion that his report is no more than conclusory.
> . . .
> The portions of the testimonies of Plummer and Blonder cited by Shore and APS amount to no more than the automatic damages theory restated in terms of the

---

[20] Mr. Blonder could not have done this calculation even if he had wanted to because, according to Shore, it "does not calculate a profit margin for each job." <u>Koch Materials Co. v. Shore Slurry Seal, Inc.</u>, No. 01-CV-2059, slip op. at 27 (D.N.J. March 21, 2005).

[21] Shore's Supplemental Filing, at 17.

> asphalt emulsion and road-paving markets. Neither deponent discussed sales or bids that were actually affected by Koch's pricing practices. Indeed, Blonder had no time for it. He deposed, very clearly, that he assessed damages solely by comparing differences in price over several years. By his theory, Shore and APS are entitled to damages for each time that they paid higher prices than competitors, irrespective of whether sales or profits were lost. It is true that a court cannot, at this stage, demand very specific damages calculations, but this testimony reveals much more than just an inaccurate damages calculation. Blonder's testimony is symptomatic of Shore and APS's entire damages theory, which relies solely on the fact of price discrimination to assess damages.
>
> . . .
>
> Based on this record, a jury would be left to speculate and guess as to how Shore and APS actually suffered as Koch customers. In sum, there is no evidence that Shore and APS suffered lost profits due to Koch's pricing.[22]

Thus, as with Mr. Blonder's Novachip conclusions, Shore's "look back" approach with regard to Mr. Blonder's conclusions concerning Koch's pricing does not remedy Mr. Blonder's failure to employ a reasonable and reliable methodology in concluding that Koch's pricing caused any harm to Koch in the first instance.

---

[22] <u>Koch Materials Co.</u>, slip op. at 19, 24 (D.N.J. March 21, 2005).

## III. CONCLUSION

Insofar as Mr. Blonder's Novachip and pricing conclusions are based on unsupported assumptions, Mr. Blonder should not be permitted to opine on Shore's damages under Novachip and as a result of Koch's pricing at trial. Thus, in keeping with the Court's Order on June 9, 2005, Mr. Blonder should only be permitted to offer testimony at trial on Shore's damages for those jobs on which Shore never bid allegedly due to Koch's alleged representations ($403,000), which Shore seeks under its New Jersey Consumer Fraud Act claim.[23]

Dated: June 13, 2005

Respectfully submitted,

/s/ Stephen B. Nolan
Stephen B. Nolan, Esquire (sn8810)
Stradley, Ronon, Stevens & Young, LLP
Woodland Falls Corporate Park
200 Lake Drive East, Suite 100
Cherry Hill, NJ  08002
Phone: (856) 321-2400
Fax: (856) 321-2415
snolan@stradley.com

John R. Ferguson, pro hac vice
Jonathan P. Guy, pro hac vice
Kathleen A. Orr, pro hac vice
Swidler Berlin LLP
3000 K Street, N.W., Suite 300
Washington, D.C. 20007
Phone: (202) 424-7500
Fax:    (202) 424-7643

---

[23] At the close of its Supplemental Filing, Shore requests an additional Daubert hearing on the admissibility of Mr. Blonder's testimony.  The Court, however, has already held a Daubert hearing on that issue and permitted Shore an opportunity to supplement its argument.  There is no need or justification for a second Daubert hearing.  All issues and arguments are before the Court and Shore has had more than a year to set forth its position.  That is time enough.

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of June, 2005, the Plaintiff and Counterclaim Defendant Koch Materials Company's ("Koch") Response to Shore Slurry Seal, Inc. and Asphalt Paving Systems, Inc.'s Supplemental Memorandum in Opposition to Koch's Motion to Exclude the Expert Report and Testimony of Brian Blonder and Certification of Counsel was cased to be electronically filed with the United States District Court for the District of New Jersey via the Court's Electronic Case Filing System (ECF) and that this document is available thereon for viewing and downloading. I also hereby certify that by filing the aforementioned document electronically, it was caused to be served electronically upon the following counsel for defendants this 13th day of June, 2005:

    Carl Hittinger, Esq.
    Neil C. Schur, Esq.
    Stevens & Lee
    1818 Market Street, 29th Floor
    Philadelphia, PA 19103

                                              /s/ Stephen B. Nolan
                                              Stephen B. Nolan