IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE
HONORABLE ROBERT B. KUGLER

KOCH MATERIALS COMPANY,                :
                                       :
      Plaintiff(s),                     :
                                       :
      v.                                : Civil No. 01-2059(RBK)
                                       :
SHORE SLURRY SEAL, INC., et al,        :
                                       :
      Defendant(s).                     :

# O P I N I O N

Plaintiff Koch Materials Company ("Koch") filed a Motion In Limine to exclude the expert testimony of Brian Blonder, a damages witness retained by defendant Shore Slurry Seal, Inc., and Asphalt Paving Systems, Inc. ("Shore"). Shore submitted a Brief and Exhibits in opposition. The Court held a hearing on June 9, 2005.

At that time, the Court denied Koch's Motion as to Blonder's opinion regarding damages he claimed Shore suffered on thirty-two jobs it never bid. However, the Court reserved decision on two other issues: (1) Blonder's foundation and methodology in arriving at an opinion on lost profits on the Exclusive Supply Agreement ("ESA") from Koch allegedly overcharging Shore for emulsion, and (2) Blonder's foundation and analysis regarding the Novachip license. Shore asked for and received permission to supplement the record on these issues, which it did. Shore also submitted an affidavit of Brian Blonder. Koch responded with its own supplemental brief. Trial begins on June 20, 2005. This Opinion supplements the Court's on-the-record comments made at the hearing on June 9, 2005. For the reasons which follow, the Court Grants the balance of Koch's Motion.

Initially, the Court notes and rejects Shore's request for yet another <u>Daubert</u> hearing. Shore, despite counsel's assertions to the contrary, knew one of the Motions being considered on June 9, 2005, was Koch's attack on its expert. As noted, the Court also gave Shore the opportunity to supplement its submissions based entirely on Shore's representation that the matters the Court inquired about were in the discovery record and Shore would provide citations. Nothing more is required. See <u>Padillas v. Stork-Gamco, Inc.</u>, 186 F.3d. 412, (3d.Cir. 1999).

EXCLUSIVE SUPPLY AGREEMENT

This claim focused on that provision of the ESA wherein Koch promised it would give Shore the best price it offered any Shore competitor during a two-week period. The parties call it the "most favored nation" clause. On its publicly bid contracts which were awarded to the lowest responsible bidder, Shore claims Koch charged Shore more for the emulsion than Koch charged Shore's competitors. Thus, Shore claims a violation of the above clause.

That "overcharge" translates, according to Blonder and Shore, to lower profits than Shore would otherwise have earned. It's a simple equation: lower costs = greater profits. The lost profit thus equates exactly with the alleged overcharge. Proof of that proposition is another matter.

Unfortunately, Shore explicitly disclaims the easier case–bids lost to a lower bidder. One presumably could recalculate Shore's losing bids by substituting the promised lower cost for emulsion. As the winning bidder and bid is publicly known, Shore could easily ascertain whether a lower bid would have won that contract. Thus taking a historical average of profit on successful contracts, an expert could determine how much profit Shore lost on unsuccessful bids it would win had Koch charged the right price. But nothing in this case is destined to be easy. Shore seeks only "profits" for the bids it won and performed.

A simple example will illustrate the issue facing Blonder. Suppose Smith pays $2.00 for component parts. It uses that number in formulating a bid on a project where the lowest bidder wins the contract. Smith wins the bid, performs the contract, and makes a $10.00 profit. Suppose

2

further that sometime later Smith learns it was overcharged for the component part and should only have paid $1.00 not $2.00.

Does that necessarily mean, without more, that Smith would have earned a profit of $11.00 on this contract? Maybe, and maybe not. It depends on how Smith formulated the bid. If Smith merely would have built the $1 savings on the part into a $1 lower bid, there was no effect on the profit. Without an analysis of Smith's bidding procedure, its cost structure, and profit margin, one cannot be sure if there was any effect on the profit.

The point is that some analysis is necessary before concluding that a lower cost equates to a higher profit in exactly the same amount. Blonder did no such analysis. There is no way to know whether Shore would have submitted a bid lower by the exact amount of overcharge, half of the lower price, or any percentage of the lower price. Blonder simply does not know what Shore would have done with a lower component cost. The Court is unaware of any principle of accounting or economics that automatically equates, without more in a bidding situation such as this, a lower component cost with an equally higher profit. And Shore, whose burden it is, points to none.

Despite counsel's promise, the supplemental brief fails to answer this question. Much is made of Shore's unhappiness with Koch's alleged refusal to guarantee any price quotes over the life of the contract, thereby exposing Shore to risk of price fluctuations. That was not helpful and did not answer the question of what Shore would have done with a lower component cost. Nor is there any evidence Blonder used this information in arriving at his opinions.

Consequently, Blonder's opinion on lost profits from the ESA lacks a proper foundation and the methodology of equating lower costs with equally higher profits is no methodology at all. It's an unwarranted assumption.

Koch's Motion to exclude Blonder's opinion of lost profits on the ESA is **GRANTED**.

## NOVACHIP

Novachip is a paving process patented by Scrug, a French company. Scrug licensed Shore to use the Novachip process in most of the United States. As part of a complicated transaction, Koch acquired this license from Shore for $4 million. However, Shore claims as part of its counterclaim it was "fraudulently induced" to assign the license to Koch and seeks the profits it claims it would have earned had it kept the license. Blonder gives an opinion as to that amount.

The difficulty comes in Blonder's repeated comparisons of Shore to Koch:

> Shore would have continued to earn royalties from sub-licensing agreements with users of the valuable Novachip technology in much the same way that Koch did from 1998 through 2005." Blonder Report, 1/9/04, ¶50;

> It is therefore reasonable to expect that Shore . . . would have kept the Novachip technology license with Scrug and obtained additional agreements with sublicensees similar to those obtained by Koch from 1998 through 2002  ¶51.

And Blonder assumes that because Koch claims to have applied 40,000,000 square yards of Novachip in the U.S. by 2003, Shore would have done at least as much had it retained the license. See ¶¶53,54.

Blonder's recent affidavit continues the comparison:

> This provides clear evidence of the licensing potential of Shore and supports the reasonable assumption that Shore could have licensed at levels similar to Koch, if not even greater levels, if it maintained rights to license in the same territory acquired by Koch. Blonder Aff., ¶8.

When asked by the Court about these comparisons to Koch, and what information Blonder had about Koch's efforts to market the license, and thus the basis of Blonder's assumption, counsel for Shore replied that Blonder really wasn't comparing the two. Rather he was doing a

projection based upon the history of Shore's efforts to sub-license the technology before and after assignment of the license. Because that is not apparent from Blonder's report on the matters presented in Shore's brief and exhibits, Shore was given leave to supplement the record.

A comparison with a sufficiently similar company can meet the methodology requirements of Daubert, as could a projection based on historical data. But neither Blonder's report nor the discovery relied upon do either. The crux of the problem is that Blonder starts everything with the 40,000,000, square yard figure and calculates from there. He simply assumes, with no real analysis, that Shore would have done at least as much.

In its supplemental submissions, Shore highlights certain efforts it undertook to expand its Novachip business and claims Blonder "considered and relied" upon this information. Frankly, that is not apparent. Moreover, must of this information is simply a rehash of what appeared in the original brief in opposition.

Blonder acknowledges he did no independent analysis of Koch's Novachip business. Nor did he do any real analysis of Shore's efforts to market Novachip and how it compared with Koch's. He simply acknowledged there were some efforts by Shore, a fact not really in dispute. Rather than scientifically comparing Koch and Shore, he simply assumes Shore could do what Koch did.

There is no doubt that a proper expert using sound methodology could better project a loss based on Shore's history or make a valid comparison with Koch. Blonder did neither. There was no methodology applied to these critical areas. He simply made unsound assumptions.

Therefore, Koch's Motion to exclude Blonder from testifying about Novachip damages is **GRANTED**. An Order will enter.

.

                                                s/Robert B. Kugler
                                                ROBERT B. KUGLER
                                                United States District Judge